NORTHERN COMMERCIAL CO. et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   October 13, 1914.)

No. 2293.

1. SUBMISSION OF CONTROVERSY (§ 14*)—RIGHT TO APPEAL—ESTOPPEL TO OBJECT.

Where both parties treated a dispute as one suitable to be submitted to the court without action as a civil controversy, as authorized by Code Civ. Proc. Alaska, c. 28, and it was determined at the trial on that theory without objection, and judgment rendered in favor of defendant, it could not object on appeal that plaintiff was not entitled to have the judgment reviewed, because the subject of the controversy was not one which the parties could lawfully submit to the court for determination without action.

[Ed. Note.—For other cases, see Submission of Controversy, Cent. Dig. § 15; Dec. Dig. § 14.*]

2. STATUTES (§ 217*)—CONSTRUCTION.

Where a statute is ambiguous, the court may put itself as far as possible in the light that the Legislature enjoyed, including the history of the times, to discover the legislative intent, but not so where the language is clear and the meaning obvious.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 293; Dec. Dig. § 217.*]

3. STATUTES (§ 225*)—CONSTRUCTION—EARLIER ACTS.

Statutes relating to the same subject, including earlier acts which have expired or been repealed, must be construed in pari materia.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 302, 303; Dec. Dig. § 225.*]

4. STATUTES (§§ 197, 206*)—CONSTRUCTION—"OR"—"AND."

In construing a statute, effect, if possible, must be given to every word and phrase, so as to render the statute a harmonious whole, and the words "or" and "and" may be convertible, if the sense requires it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 275, 283; Dec. Dig. §§ 197, 206.*

For other definitions, see Words and Phrases, First and Second Series, And; Or.]

5. SHIPPING (§ 6*)—LICENSE TAXES—STATUTES—CONSTRUCTION—"NOT PAYING LICENSE OR TAX ELSEWHERE."

Act June 13, 1902, c. 1082, 32 Stat. 385, divided the district of Alaska into three recording and judicial divisions, and Code Cr. Proc. Alaska, § 460, provides that transportation lines, propelled by mechanical power, registered in the district of Alaska, or "not paying license or tax elsewhere," shall pay a license tonnage tax on each vessel, and shall obtain a license to prosecute such business from a district court, or a subdivision thereof, within the district of Alaska. Held, that the words "not paying license or tax elsewhere" should be construed as limited to the payment of a license tax under the act in one of the districts of Alaska, and hence a transportation line operating vessels within Alaskan and Canadian waters and paying a tax in Canada was not for that reason exempt from liability for the tax imposed by section 460.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 12–15; Dec. Dig. § 6.*]

6. SHIPPING (§ 6*)—BARGES—LICENSE TAXES—STATUTE—CONSTRUCTION.

Code Cr. Proc. Alaska, § 460, imposing a license tax on freight and passenger transportation lines propelled by mechanical power, registered

in the District of Alaska, includes barges operated by craft propelled by mechanical power.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 12–15; Dec. Dig. § 6.*]

In Error to and on Appeal from the District Court of the United States for the Fourth Division of the Territory of Alaska; Edward E. Cushman and Peter D. Overfield, Judges.

Submission of controversy between the United States and the Northern Commercial Company and Northern Navigation Company. From a judgment in favor of the United States, the companies named appeal and bring error. Affirmed.

See, also, 217 Fed. 30.

This cause was presented to the trial court, under the title of United States of America v. Northern Commercial Company and Northern Navigation Company, upon an agreed statement of facts, in pursuance of the provisions of chapter 28 of the Code of Civil Procedure of Alaska, whereby it appears that, during the years 1905 and 1906, the defendant the Northern Commercial Company operated certain sternwheel steamboats for transportation purposes on the Yukon river and its tributaries, plying between ports in the district of Alaska and ports in Yukon Territory, Canada, for the operation of which no licenses were procured, and during the same years operated certain other steamboats on the Yukon river and its tributaries, and in the Bering Sea, at points between St. Michael and Fairbanks, Alaska, for which operation licenses were procured in pursuance of section 460 of the Code of Criminal Procedure of the District of Alaska; that for the boats operated between points in Alaska and points in Canada the company was compelled to and did pay to the Canadian government a tax of 8 cents per ton gross, and that the United States was also exacting a tonnage tax of $1 net, customhouse measurement, upon the same vessels, which the Transportation Company resists, claiming that it should not be required to pay such license of $1 per ton on any such river steamboats not operated wholly upon the waters of Alaska. The stipulation setting forth the agreed statement was filed in court October 27, 1906. The cause was not brought on for trial until August 19, 1911, and on the 24th of that month the parties, by order of court, were permitted to amend their statement of facts to cover also the years 1907 to 1911, inclusive.

The statute under which the license tax of $1 net is claimed to be due the government is section 460, supra, and provides that any person, corporation, or company prosecuting any of the following lines of business within the district of Alaska shall first obtain license to do so from a District Court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trade as follows:

"Freight and passenger transportation lines, propelled by mechanical power, registered in the district of Alaska, or not paying license or tax elsewhere, and river and lake steamers, as well as transportation lines doing business wholly within the district of Alaska, one dollar per ton per annum on net tonnage, custom-house measurement, of each vessel.

\* \* \* \* \* \* \* \* \* \*

"Ships and shipping: Ocean and coastwise vessels doing local business for hire plying in Alaskan waters, registered in Alaska or not paying license or tax elsewhere, one dollar per ton per annum on net tonnage, customhouse measurement, of each vessel."

The judgment of the trial court being in favor of the government, the defendants prosecute both an appeal and a writ of error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas McGowan and John A. Clark, both of Fairbanks, Alaska, and Lloyd S. Ackerman, William Thomas, Louis S. Beedy, James Lanagan, all of San Francisco, Cal., for appellants and plaintiffs in error.

James J. Crossley, U. S. Atty., and Louis R. Gillette, Asst. U. S. Atty., both of Fairbanks, Alaska.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] Preliminarily, the government challenges the right of the defendants to prosecute either an appeal or a writ of error to this court, on the ground that the subject of controversy is not one which the parties could lawfully submit to the court for determination without an action.

Chapter 28 of the Code of Civil Procedure provides for the submission to the court by the parties involved of a question in controversy which might be the subject of an action, and relates to civil actions or controversies. It is urged that the proceeding is in effect an application for a license, coupled with a protest against being required to take one out as a prerequisite to transacting the particular business desired to be engaged in. But we do not so regard it. It is manifest that there was a dispute between the parties as to whether the defendants were liable to the payment of the $1 net tonnage tax, the government contending for and the defendants against the proposition, and it was no doubt the purpose of the parties by the stipulation to submit the question or controversy to the court for its adjudication.

Were the controversy such as that a civil action would lie, there could scarcely be a doubt that a submission could be had under the statute. We have been cited to no statute by virtue of which a civil action will lie for the recovery of the license tax; but the omission to take out such a license and pay the tax is made a misdemeanor, punishable by fine and imprisonment. However, the parties have seen fit to treat the dispute as one suitable to be submitted to the court for determination, without action, as a civil controversy, and we are not disposed, after the government has acquired the judgment of the court on that theory, to deny the defendants their remedy by appeal or the prosecution of a writ of error from such judgment. It would be unjust that the government should obtain an advantage upon a given theory, and then perpetuate the advantage by a repudiation of such theory. It should be further remarked that the question as to whether the cause was one suitable to be so submitted to the trial court was not once raised in that court.

The principal question arising from the controversy is whether the defendant companies were required by the statute noticed in the statement to procure a license and to pay the tonnage tax imposed during the years involved. This depends wholly upon the proper construction of the statute.

[2] As a premise, certain well-established principles of construction may be recounted. The court may with propriety, where the language of the statute appears to be ambiguous or the meaning doubtful, put itself so far as possible in the light that the lawmakers enjoyed, and

view the situation as it appeared to them, and thereby ascertain and discover the purpose and intendment of the enactment from the language employed, in connection with the attending conditions and circumstances, including the history of the times. United States v. Union Pacific Railroad Co., 91 U. S. 72, 79, 23 L. Ed. 224; Platt v. Union Pacific Railroad Co., 99 U. S. 48, 64, 25 L. Ed. 424; Smith v. Townsend, 148 U. S. 490, 494, 13 Sup. Ct. 634, 37 L. Ed. 533.

It is scarcely necessary to observe that, where the language of the statute is clear and unambiguous, no resort to the rule is essential, for, the meaning being obvious, the statute construes itself.

[3] Statutes relating to the same subject-matter must be construed in pari materia. This may include the earlier acts and such as have expired or been repealed as well. Sections 43 and 48, Endlich on the Interpretation of Statutes.

[4] Effect, if possible, must be given to every word and phase of the statute, so as to render it a harmonious whole; and the words "or" and "and" are sometimes convertible, as the sense may require.

[5] The principal difficulty attending the construction of the present statute hinges about the words "or not paying license or tax elsewhere." The statute was adopted as an amendment of a preceding statute, which read, "Freight and passenger transportation lines, propelled by mechanical power on inland waters, one dollar per ton per annum on net tonnage, customhouse measurement, of each vessel;" the clause relating to ships and shipping being the same as now, with the words "registered in Alaska or not paying license or tax elsewhere" omitted. Act March 3, 1899, c. 429, 30 Stat. 1336.

The later statute, or the one under consideration, was adopted June 6, 1900. 31 Stat. 321, c. 786. It is comprised in an act making provision for a civil government for Alaska, which by its fourth section establishes a District Court, consisting of three divisions, to be presided over by a judge for each division.

By a still later act, approved June 13, 1902 (32 Stat. 385, c. 1082), the district of Alaska was divided into three recording and judicial divisions.

That the statute was intended to require license of vessels doing a transportation business partly on waters of Alaska and partly on waters elsewhere is evidenced by the provision, "as well as transportation lines doing business wholly within the District of Alaska." True, when Congress passed the act, it was doubtless known to it that steamboats and other craft were plying on the Yukon river between points in Alaska and points in Canada, a foreign country, as well as between points wholly in Alaska; but it must be considered that Congress was legislating for the district of Alaska, the object being to provide revenue for carrying on its governmental affairs, and the new statute has added another subject touching which revenue may be exacted.

Plaintiffs in error insist that the words "or not paying license or tax elsewhere" must be given a general application, and that the intendment of the statute is that they shall relate to the payment of a license or tax in Canada, or other place outside the territory of Alaska, as well as in Alaska.

It may be that Congress was apprised that such vessels would be sub-ject to a tax in Canada; but, in view of the fact that they were made the subject of license for revenue in the district of Alaska, it can hardly be supposed that it intended, at the same stroke of the pen, to exempt from license the very subject designed by it for producing revenue at home, or to make such revenue dependent upon whether some foreign country should exact a tax upon the same subject. Under such a con-struction the legislation for revenue purposes might prove entirely fu-tile, and, indeed, it would in the present case as to the added subject, as all the vessels plying on the Yukon between Alaska and Canada are subject to a tax in Canada.

Looking further into the statute, the transportation lines are required to apply for and obtain the license from a District Court, or a subdivi-sion thereof, in the district; there being three judicial divisions, as we have seen. It seems, therefore, more in consonance with the purpose of Congress to interpret the clause as being addressed to the court as well as for the delimitation of the license, and if the transportation line or lines are paying the license or tax in some other judicial division of the territory, then it or they would not be further subject to the license tax. In other words, these words simply qualify the subject designated for license, so that the tax may not be imposed in more than one judi-cial subdivision of the territory. This is the only rational rendition which will give practical effect to the statute, and at the same time give meaning and effect to all the words of the statute. The clause relating to ships and shipping would seem to bear out this construction. It was simply designed to make ocean and coastwise vessels doing a local busi-ness subjects of a license tax for territorial revenue purposes, and it was not intended to exempt such vessels from the tax because they might be paying a license or tax somewhere else in the United States or foreign countries. It is only where they are paying a license or tax in some other judicial division of the territory that they will be thus ex-empt.

We have not overlooked the grammatical construction given the stat-ute by Professor Gayley. It is interesting and academically instructive, but where the language is ambiguous, or its meaning involved, such construction must give way to the settled rules of legal construction.

[6] Another question submitted is whether the statute applies to barges. If used in connection with mechanical-power propelled craft, there exists no reason why they should not also be subject to the same license or tax. As the tug and tow are often one in legal parlance, so when a barge is pushed forward through means of a vessel propelled by mechanical power, and used for transportation of freight or passen-gers, the two vessels are in practical effect one, and must submit to the license or tax.

The judgment of the trial court will be affirmed.