## TERRITORY OF ALASKA v. FIVE GALLONS OF ALCOHOL.
No. 3426.

District Court of Alaska. Second Division. Nome.
March 1, 1940.

Chas. J. Clasby, U. S. Dist. Atty., of Fairbanks, for plaintiff.

O. D. Cochran, of Nome, for claimant.

MORISON, District Judge.

This is an action in rem. An action against a certain untaxed Five Gallons of Alcohol, seeking to have said alcohol declared contraband and sold, and the proceeds thereof deposited in the Territorial Treasury.

The question presented in this case for determination is whether or not alcohol received by a licensed retailer of intoxicating liquor, in the Territory, and held, and sold and shipped by such retailer to another party in the Territory, without having the strip tax revenue stamps attached to the containers of said liquor, is contraband liquor subject to seizure by the Territory and confiscation and sale, and the proceeds thereof deposited in the Territorial Treasury under Chapter 78 of the Session Laws of Alaska, 1937.

The right of the Territory to seize the alcohol in question and to condemn and sell the same is resisted by the Nome Mercantile and Mining Company, a corporation, as claimant of the said alcohol.

The libel of information avers substantially that on or about the eighteenth of September, 1939, the United States Marshal, for the Second Judicial Division, acting through his authorized agents, seized the alcohol in question; that the said alcohol was in the possession of the Wien Alaska Airlines, a common carrier, and was consigned to one John Moneymaker at Haycock, Alaska. It further avers that the

said Five Gallons of Alcohol were shipped into the Territory of Alaska and transferred by sale from the importer thereof into whose hands the liquor first came, to the said John Moneymaker, without the containers of the alcohol having affixed thereto the Territorial liquor strip tax revenue stamps; and that under sections 7 and 12 of Chapter 78, Session Laws of Alaska 1937, said Five Gallons of Alcohol became and are contraband subject to confiscation and forfeiture to the Territory of Alaska.

The said Nome Mercantile and Mining Company, which is a corporation engaged in the retail liquor business, intervened in the case as claimant of the said alcohol; filed its answer, and admitted the seizure of the alcohol in the possession of the Wien Alaska Airlines, a common carrier, as alleged, and that the said alcohol was consigned to said John Moneymaker. It also admitted that the containers of the alcohol were unstamped, as alleged, and that said alcohol is intoxicating liquor.

No witnesses were introduced in the trial but the case was submitted to the Court without the intervention of a jury, on the following agreed statement of facts, to wit:

I. "That the Five Gallons of Alcohol were attached by the U. S. Marshal and that the same is now being held by him under the writ of attachment issued herein and dated the 30th day of September, 1939."

II. "That the claimant is a corporation engaged in the retail liquor business at Nome, Alaska and has a retail liquor license from the Territory of Alaska authorizing it to engage in the retail of liquors. That the claimant is the person in the Territory of Alaska into whose hands the liquor first came.

"That the claimant delivered said Five Gallons of Alcohol to the Wien Alaska Airlines for shipment to one John Moneymaker at Haycock, Alaska, and that the said Five Gallons of Alcohol were seized by the U. S. Marshal in the office of Wien Alaska Airlines and held under the writ of attachment herein issued. That neither the packages nor

containers in which said liquor was contained had attached thereto the Territorial Liquor Strip Tax Revenue Stamp."

From this statement of facts it appears that the Nome Mercantile and Mining Company is a corporation whose place of business is Nome, Alaska; that it is engaged in the retail liquor business; and that "it is the person in the Territory of Alaska into whose hands the liquor first came"; and further, that the said alcohol came into the hands of claimant unstamped; that it was held by the claimant for a longer or shorter period unstamped; and that it was then sold by the claimant to one John Moneymaker, of Haycock, Alaska, and deposited by the claimant with the Wien Alaska Airlines for shipment to the said Moneymaker, still unstamped, when it was seized by the Marshal as contraband liquor.

The sole defense of the claimant, therefore, is that no liquors shipped into the Territory are contraband except such as may be shipped in "to others than licensees"; or in other words that liquor shipped in directly to a licensee, and which is received by him and held, and afterwards sold to another, and in pursuance of that sale, delivered to a common carrier for transportation to the purchaser thereof, is not contraband, even though it was received by the licensee, and held by him for a longer or shorter time, and then sold to a third person, and delivered to a common carrier for transportation to the purchaser without ever having had attached to the containers of the said liquor the strip tax revenue stamps required by the statute.

The statute on which this section is based declares that: "Any intoxicating liquors shipped into the Territory of Alaska other than to licensees hereunder shall be deemed contraband and subject to confiscation by the Territory and any intoxicating liquors so seized shall be sold under the orders of the District Court and the proceeds thereof deposited with the Territorial Treasurer." Session Laws 1937, Ch. 78, § 5, subsec. 7.

Another section of the same Act declares that:

"Every brewer, distiller, bottler or wholesaler selling intoxicating liquor in the Territory shall be required to pay * * *

"This tax is to be paid to the Territorial Treasurer who will furnish strip tax revenue stamps in the form prescribed by him to be attached to all liquor containers or packages.

"These stamps are to be attached by the brewer, distiller, bottler, wholesaler or importer into whose hands the liquor shall first come." Session Laws 1937, ch. 78, § 7.

Now this statute, in subsection 7 of section 5, very clearly declares that all shipments of intoxicating liquors into the Territory other than to licensees shall be deemed contraband and subject to confiscation by the Territory. It defines the offense and fixes the penalty, and sufficiently suggests the procedure to make it effective.

However, in section 12 of this Act, after setting out the penalties for various violations of the Act, we find the following: "Any intoxicating liquors shipped into the Territory, other than to licensees hereunder and contrary to the provisions of this Act, shall be deemed contraband, and subject to confiscation by the Territory, or any enforcement officer; and any intoxicating liquors so seized shall be sold under the order of the District Court, and the proceeds thereof deposited with the Territorial Treasurer." Session Laws 1937, ch. 78, § 12.

Now this clause "and contrary to the provisions of this Act, shall be deemed contraband," is somewhat ambiguous; and in construing it, the question arises—and this is determinative of this case—what was the intention of the legislature when it used the words "and contrary to the provisions of this Act, shall be deemed contraband, and subject to confiscation by the Territory," immediately following the word "hereunder" and beginning in the third line of above quotation?

Did the lawmakers intend that the contraband character of liquors be limited to shipments made to nonlicensees

alone, or was it intended to apply to other acts of the liquor dealer "contrary to the provisions of this act," such, for instance, as the utter failure by the brewer, by the distiller, by the bottler, by the wholesaler, and by the claimant itself, and who is the "person into whose hands the liquor first came," to attach the strip tax revenue stamps to all containers or packages which were shipped to it.

The word "contraband" originally was used in connection with warfare and smuggling, and consequently we have inherited a tendency to associate it with acts or things unusually or peculiarly culpable; however this is not the modern usage of the word. It is derived from the words contra, against, and bando, statute; and it now means simply against the statute, against the law, or just unlawful.

And thus liquor shipped to nonlicensees is against the statute and, therefore, contraband. And likewise liquors bought and received by licensees and held and resold by them without the payment of the Territorial taxes on same as evidenced by the strip tax revenue stamps attached to every container, is also against the statute, but not any more so nor any less so than shipments to nonlicensees; they both defraud the Territory of its just taxes—then why should they not both be deemed contraband?

It is a general rule of interpretation that the object which the legislature sought to obtain by its statute and the evil which it endeavored to remedy may always be considered in order to ascertain its intent and therefore to interpret its act. Northern Commercial Co. v. United States, 9 Cir., 217 F. 33, 4 Alaska Fed. 245; Brace v. Solner, 1 Alaska 361.

It is also an established rule of statutory construction that the intent of the lawmaker is to be found in the language used; and that the language is always controlling unless there are reasons for believing that the language used does not fully and accurately disclose the intent. Wellman v. Bethea, D.C., 243 F. 222, 226; United States v. Goldenberg, 168 U.S. 95, 18 S.Ct. 3, 42 L.Ed. 394.

■ And it is a further rule of construction that the effect, if possible, must be given to every word and phrase of the statute so as to render it a harmonious whole. Northern Commercial Co. v. United States, 9 Cir., 217 F. 33, 37, 4 Alaska Fed. 245.

Or, summing up the matter it may be said that the cardinal rules for the construction of a statute are that the intention of the legislative body which enacted it should be ascertained and given effect, if possible, regardless of technical rules of construction and the dry words of enactment; that the intention must be deduced, not from a part but from the entire law; that the object which the enacting body sought to attain and the evil which it was endeavoring to remedy may always be considered for the purpose of ascertaining its intention; that the statute must be given a rational, sensible construction; and that if this be consonant with its terms, it must have an interpretation that will advance the remedy and repress the wrong. Stevens v. Nave-McCord Mercantile Co., 8 Cir., 150 F. 71, 75; United States v. Ninety-Nine Diamonds, 8 Cir., 139 F. 961, 965, 2 L.R.A.,N.S., 185; Harper v. Victor, 10 Cir., 212 F. 903, 906.

■ Now, undoubtedly, this statute was passed for two purposes; one to subject the liquor traffic to the control of the police power of the Territory; and the other to raise revenue; and the strip tax revenue stamps were, obviously, the prime source of revenue from the liquor business.

Then, did the lawmakers intend in this Act to declare liquor contraband for being shipped to nonlicensees, but to exonerate such liquor from confiscation after it had been received and held and sold unlawfully, and attempted to be smuggled into the hands of a third party without the payment of this tax which should have been paid and evidence of its payment attached to the container of the liquor when it came into the hands of the claimant?

The raising of revenue being an undoubted purpose of the act in question, if not indeed the prime purpose of it,

the act must be construed, if it may be done legitimately, in the furtherance of that purpose and also to prevent the very thing undertaken by the claimant in this case, namely, to deal in intoxicating liquor without paying the just tax which the statute demands.

While it is true that this clause of section 12 of this statute is somewhat ambiguous, nevertheless it is a rule that when a statute is uncertain in meaning, it should be construed to avoid absurdity and to carry out the intention of the legislative act, because intention of the legislature and the object aimed at is the fundamental inquiry of judicial construction; and consequently when language is used capable of more than one meaning it is to be taken in that sense which will harmonize with such intention and object so as to effect the purpose of the enactment.

To do so words may be rejected and others substituted, and such construction adopted as will best promote the harmonious operation of the law as a whole. United States v. Southern Pac. Co., D.C., 230 F. 270, 275.

Or, as said in another case, effect, if possible, must be given to very word and phrase of the statute, so as to render it a harmonious whole; and the words "or" and "and" are sometimes convertible, as the sense may require. Northern Commercial Co. v. United States, 9 Cir., 217 F. 33, 36, 4 Alaska Fed. 245.

It is also an established doctrine of interpretation that punctuation is a minor and not a controlling element, and that courts will disregard the punctuation of a statute, or repunctuate it, if need be to give effect to what would otherwise appear to be its purpose and true meaning. Chicago, M. & St. P. R. Co. v. Voelker, 8 Cir., 129 F. 522, 527, 70 L.R.A. 264; Hammock v. Loan & Trust Co., 105 U.S. 77, 26 L.Ed. 1111; United States v. Lacher, 134 U.S. 624, 628, 10 S.Ct. 625, 33 L.Ed. 1080; United States v. Oregon, etc., R. Co., 164 U.S. 526, 541, 17 S.Ct. 165, 41 L.Ed. 541; Stephens v. Cherokee Nation, 174 U.S. 445, 480, 19 S.Ct. 722, 43 L.Ed. 1041.

■ If we apply these further rules of construction to this case, and it seems eminently proper to do so, and thus substitute the word "or" for "and", following the word "hereunder" in the eighth line of section 12 of the Act; or if we simply insert a comma after the word "hereunder," all the obscurity vanishes and the whole statute becomes clear and forcible.

The clause would then read: "Any intoxicating liquors shipped into the Territory, other than to licenses hereunder or contrary to the provisions of this Act shall be deemed contraband" etc. Or if properly punctuated it would read: "Any intoxicating liquors shipped into the Territory, other than to licensees hereunder, and contrary to the provisions of this Act, shall be deemed contraband" etc.

If so punctuated the antecedent of the clause, "contrary to the provisions of this Act," would clearly be "intoxicating liquors." Either one of these well established rules, that is the substitution of "or" for "and" following the word "hereunder"; or the insertion of the comma after the same word, would have the same effect on the meaning of the clause, and would make the act a clear and harmonious whole; and apparently would fulfill the purpose of the act and suppress the wrong complained of.

■ It is therefore the opinion of the Court that the alcohol in question is contraband liquor, duly seized in pursuance of the statute and subject to sale and the proceeds paid into the Treasury of the Territory.

The District Attorney may present findings of fact and conclusions of law and judgment in accordance herewith.