**HOMER ELECTRIC ASSOCIATION,
Petitioner,**

v.

**Lydia TOWSLEY, Personal Representative of the Estate of Herschell Ray Towsley, (Deceased), Respondent.**

No. S–4563.

Supreme Court of Alaska.

Nov. 27, 1992.

Bill Mellow, Juneau, for petitioner.

Jeffrey M. Feldman and Kristen Young, Young, Sanders & Feldman, Anchorage, Jeffrey D. Jefferson, Nordstrom Steele & Jefferson, Kenai, for respondent.

Toby N. Steinberger, Asst. Atty. Gen., Anchorage, Charles E. Cole, Atty. Gen., Juneau, for amicus curiae State of Alaska.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### I. INTRODUCTION

The Estate of Herschell Towsley (the Estate) is suing Homer Electric Association (HEA) for wrongful death. The sole issue presented by this petition concerns the interpretation of AS 18.60.670(1) which prohibits the placement of "any type of ... equipment ... that is capable of lateral, vertical, or swinging motion, within 10 feet of a high voltage overhead electrical line or conductor." The trial court ruled that AS 18.60.670(1) prohibits placing a crane where it is capable of extending its boom to within ten feet of a power line. HEA disagrees, arguing that AS 18.60.670(1) only prohibits placing a crane within ten feet of a power line even if it is possible for the boom to extend into the ten-foot area. We granted

HEA's petition for review. We agree with HEA and reverse the trial court.

## II. FACTS

Decedent Herschell Towsley worked as a laborer for Rollins Truck and Tractor, a subcontractor on a project near Homer. In May 1987 Towsley was holding the tag line of a pile driver as a crane's lift line was moving the pile driver. The lift line hit a power line owned and maintained by HEA.[1] Towsley was electrocuted.

The Estate claims that prior to the accident the general contractor on the project advised HEA that the project would require use of a crane near one of HEA's power lines. The Estate claims that HEA advised the contractor that the work could legally proceed as long as there was a ten-foot clearance between the power lines and the crane.

After the accident the Estate sued HEA for wrongful death. One theory of liability is that HEA was negligent per se in failing to prevent persons working near HEA's power lines from violating AS 18.60.670(1).[2] The Estate moved for a ruling that AS 18.60.670(1) prohibits placing equipment closer to power lines than the maximum extension of the equipment plus ten feet. The trial court so ruled. We granted HEA's petition for review.

## III. DISCUSSION

### A. Contentions of the Parties

Alaska Statute 18.60.670 provides in relevant part that "[a] person ... may not (1) place ... machinery ... that is capable of lateral, vertical, or swinging motion, within 10 feet of a high voltage overhead electrical line or conductor." The trial court interpreted this language to prohibit placing equipment in a location where any part of the equipment *could potentially* come within ten feet of the power line. HEA argues that the statute allows equipment to be placed where it is possible for a part of the equipment to extend into the ten-foot area, so long as no part of the equipment actually does.

Specifically, HEA argues that the trial court's interpretation of AS 18.60.670(1) is wrong because it conflicts with the plain meaning of the statute, conflicts with AS 18.60.675, runs contrary to federal interpretations of similar federal laws, runs contrary to industry and Alaska Department of Labor interpretations of AS 18.60.670, and would cause excessive and unwarranted burdens on the construction industry.

Amicus Curiae, the State of Alaska, favors HEA's interpretation. It argues that the plain meaning of

> AS 18.60.670 does not prohibit the placement of and operation of cranes just outside of the 10–foot protective area.... If the legislature wanted to prohibit the placement and operation of cranes anywhere in the vicinity of power lines so that the crane could not possibly invade the 10–foot protective area, it would have done so.

The State also argues that HEA's interpretation is consistent with the Department of Labor's two-decade-old interpretation.

The Estate argues that the trial court's interpretation is correct because safety laws should be broadly construed, HEA's interpretation would render AS 18.60.670 superfluous, and the trial court's interpretation is consistent with the Department of Labor's longstanding construction of the statute.

### B. Plain Meaning

▆ Generally, the most reliable guide to the meaning of a statute is the words of

---

**1.** HEA is an electric cooperative which provides power on the Kenai Peninsula.

**2.** AS 18.60.670 provides:

**Prohibition against placement of equipment near electrical power lines and conductors.** A person individually or through an agent or employee may not

(1) place any type of tool, equipment, machinery, or material that is capable of lateral, vertical, or swinging motion, within 10 feet of a high voltage overhead electrical line or conductor;

(2) store, operate, erect, maintain, move, or transport tools, machinery, equipment, supplies, materials, apparatus, buildings, or other structures within 10 feet of a high voltage overhead electrical line or conductor.

the statute construed in accordance with their common usage. *Lagos v. City & Borough of Sitka*, 823 P.2d 641, 643 (Alaska 1991). However, even where the statutory language considered alone seems to leave room reasonably for only one meaning, we nonetheless may consult legislative history and the rules of statutory construction, realizing that sometimes language that seems clear in the abstract takes on a different meaning when viewed in context. *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 (Alaska 1978); *State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982). In such cases the legislative history and rules of construction must present a compelling case that the literal meaning of the language of the statute is not what the legislature intended. *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983) ("Where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning has a correspondingly heavy burden of demonstrating contrary legislative intent."); *State v. Alex*, 646 P.2d at 208 n. 4 (under Alaska's sliding-scale approach to statutory interpretation, the more plain the language of the statute the more convincing the evidence of contrary legislative intent must be).

■ As noted, the trial court interpreted AS 18.60.670(1) to prohibit the placing of equipment in a location where any part of the equipment could come within ten feet of a power line. A literal reading of the statute does not support this interpretation. Read literally, AS 18.60.670(1) merely prohibits equipment from being within ten feet of a power line. The Estate does not cite to, and we have not found, any direct evidence that the legislature intended a contrary meaning. Although, as discussed below, the Estate argues that there is implicit evidence that the legislature intended a contrary meaning, we believe this evidence does not present a compelling case that the legislature did not intend AS 18.60.670(1) to

be interpreted literally. Thus, we conclude that AS 18.60.670(1) should be interpreted literally.

First, the Estate argues that the existence of section 312–20 of the 1969 Alaska General Safety Code is evidence that when the legislature enacted AS 18.60.670(1) in 1972 it intended the statute to provide the same protection as the code. Section 312–20 provided: "The operation of [equipment] *when it is possible* to bring any part of the equipment within ten (10) feet of high voltage lines is prohibited...." (Emphasis supplied.)[3] Section 312–20 was repealed in 1973 by the Department of Labor.

The Estate's assertion seems unlikely in view of the language of AS 18.60.670(1). If the legislature had intended to provide the same protection as the code provision it probably would have copied the code provision verbatim or used similarly clear language.

Second, the Estate argues that the purpose of the statute is evidence that the legislature did not intend AS 18.60.670 to be interpreted literally. Specifically, the Estate argues that the literal interpretation of the statute "is not consistent with the policy of promoting public safety which underlies the statute." Thus, the Estate argues that the trial court's interpretation is the only "construction which preserves [the statute's] usefulness." We disagree.

While the trial court's interpretation promotes a higher degree of safety than the literal interpretation, the latter does not render this statute useless. Section 670's requirements, as with most safety rules, are a compromise between competing safety and efficiency concerns. Although the literal interpretation of the statute does not eliminate the possibility of contact with a power line, it provides some margin of safety. It also provides the construction industry with a greater degree of flexibility when working near power lines than the trial court's interpretation.[4] This may be

3. In *Wallace v. State*, 557 P.2d 1120 (Alaska 1976), a violation of this regulation led to an accident very similar to the one underlying this case. The State was sued in April of 1973 for failing to enforce the regulation. *Id.* at 1122.

4. HEA notes that the trial court's interpretation might create heavier burdens for the construction industry. One of HEA's experts, Michael Harbaugh, testified in an affidavit that the trial court's interpretation

the balance that the legislature intended when it enacted AS 18.60.670. Since the plain meaning interpretation is not unreasonable, the fact that the trial court's interpretation better promotes safety does not justify departing from the literal interpretation of the statute.

Third, the Estate argues that the literal interpretation of subsection (1) renders it meaningless in view of subsection (2).[5] The Estate argues that this provides evidence that the legislature did not intend AS 18.60.670 to be interpreted literally. To begin, we note that the Estate's analysis may fairly be disputed. Its argument only succeeds if "placing" equipment is comprehended in "storing, operating, erecting, maintaining, moving, or transporting" it. But if that is true, then the Estate's interpretation of subsection (1) suffers from the same defect: it makes subsection (2) functionless for if equipment can not be placed where it may come within ten feet of a power line it is not necessary to prohibit its storage or operation within ten feet of a power line. For the purpose of evaluating the Estate's argument, however, we assume that the Estate is correct in urging that the literal interpretation of subsection (1) is redundant because subsection (2) also prevents equipment from coming within ten feet of a power line. While this would be a valid argument that the legislature intended a different meaning than the literal meaning, we conclude that it is not sufficiently strong to overcome the presumption

that the legislature intended the statute to be interpreted literally. *See State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982).

■ As a general rule, a " 'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.' " *Alascom, Inc. v. North Slope Borough, Bd. of Equalization,* 659 P.2d 1175, 1178 n. 5 (Alaska 1983) (quoting 2A C. Sands, *Statutes & Statutory Construction* § 46.06 (4th ed. 1973)). Application of this rule suggests that the trial court's interpretation of subsection (1) is correct because the court's interpretation avoids redundancy. Nonetheless, it is our view that even in light of the rule of construction disfavoring redundant interpretations, section 670(1) cannot reasonably be read as the trial court read it. The actual language of subsection (1) falls so seriously short of expressing a prohibition on placement of equipment where it potentially might come within the ten-foot protected zone that the fact that it may be redundant if construed literally is an insufficiently compelling reason to persuade us that the statute has another meaning.[6]

■ Redundancy in legislative drafting, as in other writing, is not uncommon. *White v. Roughton,* 689 F.2d 118, 120 (7th Cir.), *cert. denied,* 460 U.S. 1070, 103 S.Ct. 1524, 75 L.Ed.2d 947 (1982). The rules governing use of the doctrine of negligence per se warn against adopting a statute as a negligence standard if its meaning is so

---

is not required for safety. . . . In most cities, it is not feasible to de-energize or barricade all the overhead lines that it is possible for a crane or drag line to reach while working. . . . Extending the prohibited area by adding to it the distance the equipment is capable of moving would either eliminate the use of mechanical equipment or might force the use of an unsafe location.

Another expert, Terry Miller, testified in an affidavit that the trial court's interpretation "is unworkable and would prevent the use of backhoes and cranes on most construction sites in Alaska."

5. Subsection (2) provides that a person may not "store, operate, erect, maintain, move, or transport . . . equipment . . . within 10 feet of a high voltage . . . line or conductor."

6. We are unpersuaded by the Estate's argument that the language "within 10 feet of a high voltage overhead electrical line or conductor" modifies "capable of lateral, vertical, or swinging motion," instead of the verb "place." This interpretation would result in a grammatically incorrect and ineffective sentence as there would be no object of the verb "place" describing where the equipment may not be placed. Further, in subsection (2) the phrase "within 10 feet" clearly modifies verbs at the beginning of the subsection in that it tells the reader that equipment may not be stored or operated within ten feet of an electrical line. The phrase does not describe the equipment. Since the same phrase is used in a parallel location in both subsections, it seems most unlikely that it would have a grammatical function in the first subsection which is different from its function in the second.

obscure because of, for example, imprecise wording, that the standard of care is not known to reasonable people in the same position or trade as the defendant. *Northern Lights Motel, Inc. v. Sweaney,* 561 P.2d 1176, 1184, *aff'd on rehearing,* 563 P.2d 256 (Alaska 1977); *Ferrell v. Baxter,* 484 P.2d 250, 263 (Alaska 1971). Care thus should be taken that the rule disfavoring redundant interpretations is not used mechanistically. It should not be employed in a manner that attributes obscure and unintended meanings to a statutory provision. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06, at 120 (5th ed. 1992) (stating that though a court should generally give effect to every provision in a statute, it should disregard a provision resulting from legislative inadvertence).

Moreover, a comparison to another section suggests that the literal meaning of subsection (1) of section 670 is the intended one. Alaska Statute 18.60.675 provides:

A person individually or through an agent or employee may not operate a crane, derrick, power shovel, drilling rig, hoisting equipment, or similar apparatus, any part of which is capable of vertical, lateral, or swinging motion, unless the operator or the operator's employer posts and maintains in plain view of the operator, a durable warning sign legible at 12 feet, that reads as follows: "It is unlawful to operate this equipment within 10 feet of high voltage lines."

Section 675 applies only to equipment covered by section 670(1). The warning man-

dated by 675 is the literal meaning of section 670(1), namely that the equipment may not come closer than ten feet of a high voltage line. If the legislature had intended 670(1) to express a prohibition on placement of cranes where they might be extended to within ten feet of a power line, it might have mandated a sign stating that, for example, "[i]t is unlawful to place or operate this equipment where it is possible for any part of this equipment to come within ten feet of high voltage lines." *See State, Dep't of Highways v. Green,* 586 P.2d 595, 603 n. 24 (Alaska 1978) ("In some circumstances, the interpretation of one provision is properly influenced by the content of another provision addressing similar purposes or objects.").

Fourth, the Estate claims that the Department of Labor's longstanding construction of AS 18.60.670(1) provides evidence that the legislature did not intend it to be interpreted literally. "When an agency's interpretation of a statute is long-standing ... it is entitled to some deference by this court." *State, Dep't of Revenue v. Alaska Pulp America, Inc.,* 674 P.2d 268, 277 (Alaska 1983). However, HEA also claims that the Department of Labor's longstanding construction of AS 18.60.670(1) supports its respective construction. Both parties cite to conflicting affidavits of Department of Labor employees and construction industry experts to support their arguments.[7] The affidavits are not helpful because they are in conflict. However, regu-

---

7. The Estate principally relies on the affidavit of an electrical inspector for the State Department of Labor, Preston Williams. Williams is responsible for providing advice about Alaska electrical statutes. Williams testified that the Department of Labor interprets AS 18.60.670(1) as requiring that equipment capable of movement "be placed so that at its furthest possible extension toward a high voltage overhead electrical line or conductor, it maintains the required minimum ten feet of clearance." Williams testified that the Department of Labor has given the statute this interpretation since it was enacted in 1972. In addition, Williams testified in a deposition that he contacted his supervisor and two other Department electrical inspectors. According to Williams, they all agreed with his affidavit.

In response, HEA relies on numerous affidavits. One of the affidavits is from Jody Vick. Since August 1988, Vick has worked as a voluntary compliance officer for the Division of Labor Standards and Safety of the Department of Labor. From 1971 to 1988 Vick worked as an electrician in Alaska. Vick testified that AS 18.60.670 is not enforced in the manner suggested by Williams.

In addition HEA relies on a number of construction industry employees who testified that they have much experience working near power lines and the Department of Labor has not interpreted AS 18.60.670 in accordance with Williams' affidavit.

lations promulgated by the Department of Labor imply that the Estate is wrong.

Section 05.140(a)(2)(D)(v)(b) of the Construction Code provides:

(a) *Crane and derricks.*

(2) *Crawlers, Locomotive and Truck Cranes.*

(D) Operating Crew.

(v) The operating crew shall consist of the designated operator plus an attendant who shall act only as a safety observer when the crane is in operation if any one of the following criteria exists:

(b) If the equipment is operating where any part is capable of reaching within 15 feet of an overhead power line in which case the provisions of AS 18.60.670–695 apply[.]

This regulation and a similar one in the General Safety Code [8] are the only regulations addressing whether equipment can be located where any part is potentially capable of touching an overhead power line. They require a safety observer when that potential is present. They do not, however, bar placement of the equipment in such a position. If the Department interpreted section 670(1) to prohibit the placement of equipment where any part of the equipment might come in contact with a power line, one would expect a regulation expressing such a prohibition.

## IV.   CONCLUSION

Alaska Statute 18.60.670(1) should be interpreted literally to prohibit placing a crane within ten feet of a high voltage electrical line. The statute does not prohibit placing a crane where some parts of it might be moved to come within the ten-foot zone. Respondent has not presented a compelling case that this is not what the

statute means. We therefore reverse the order of the trial court.

COMPTON, J., dissents.

COMPTON, Justice, dissenting.

I believe that this court makes three critical errors in reversing the trial court. First, it erroneously assumes that there is only one "literal interpretation" of AS 18.-60.670. Second, it disregards the admitted redundancy which will result from its interpretation. Third, it fails to construe the statute to give it the broadest safety application. For these reasons I dissent.

The plain meaning rule "provides that if a statute's meaning is plain, it should be enforced as it reads without judicial modification or construction." *Alaska Public Employees v. Fairbanks*, 753 P.2d 725, 726 n. 5 (Alaska 1988). Nevertheless, we have rejected a mechanical application of this rule that would require this court to automatically accept the "plain meaning" of a statute without consideration of legislative intent. *State v. Alex*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982). In its place we adopted a sliding scale whereby the more plain the language of a statute, " 'the more convincing the contrary legislative history must be' " to effect the adoption of a different interpretation. *Id.* (quoting *United States v. United States Steel Corp.*, 483 F.2d 439, 444 (7th Cir.1973), *cert. denied*, 414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1974)).[1]

The court believes that the language of AS 18.60.670 is quite plain, noting that "[a] literal reading of the statute does not support [the trial court's] interpretation." Perhaps a more accurate description of the court's methodology would be that a "literal" reading of subsection (1), taken out of context and without concern for any resulting redundancy between subsections, does

---

**8.** *See* Alaska General Safety Code § 01.-0705(i)(1)(E)(ii).

**1.** There is little evidence in the legislative history of AS 18.60.670(1) that suggests what the legislature intended. The court believes that the legislative intent of subsection 670(1) can be inferred from another section, AS 18.60.675. Alaska Statute 18.60.675 requires that "equipment ... any part of which is capable of verti-

cal, lateral, or swinging motion" carry a prominent warning sign that states: "It is unlawful to operate this equipment within ten feet of high voltage lines."

However, this warning could also originate from the language of subsection 670(2). I do not believe that this brief warning is conclusive of the effect of AS 18.60.670 or dispositive of the effect of subsection (1) specifically.

not support the trial court's interpretation. This much I am willing to concede. The problem with the court's approach is that (1) it wrongly concludes that the statute's meaning is clear on its face and thus the plain meaning approach is appropriate and (2) it applies its literal reading to only one subsection of the statute rather than the statute as a whole.

With regard to the plain meaning approach, the United States Supreme Court has noted that "the threshold question in ascertaining the correct interpretation of a statute is whether the language of the statute is clear or arguably ambiguous." *K Mart v. Cartier*, 486 U.S. 281, 293 n. 4, 108 S.Ct. 1811, 1818 n. 4, 100 L.Ed.2d 313 (1988). While the language of subsection (1) may be clear when read in isolation, it is far from clear when read together with subsection (2). As the Supreme Court stated, "in ascertaining the plain meaning of the statute, the court must look to the particular language at issue, as well as the language and design of the statute as a whole." *Id.* at 291. It is incorrect to conclude, as this court does, that the statute can be read piece by piece without reference to other subsections or the statutory scheme as a whole.

With that in mind, I am persuaded that the redundancy between subsections (1) and (2) which results from the court's reading cannot be so easily overlooked. The court does not reconcile this redundancy. Instead, it merely insists that the "actual language" of subsection (1) so convincingly conveys its interpretation that the redundancy should be ignored.[2] This begs the question. I do not divine such a singular meaning from the "actual language." I would sooner believe that the legislature made a grammatical error and improperly added a comma, than believe it simultaneously passed two subsections of a statute that provide for essentially coextensive restrictions.[3] *See Territory of Alaska v. Five Gallons of Alcohol*, 10 Alaska 1, 9 (D. Alaska 1940) ("It is also an established doctrine of interpretation that punctuation is a minor and not a controlling element, and that courts will disregard the punctuation of a statute, or repunctuate it, if need be to give effect to what would otherwise appear to be its purpose and true meaning.").

As the court recognizes, " 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.' " *Alascom, Inc. v. North Slope Borough, Bd. of Equalization*, 659 P.2d 1175, 1178 n. 5 (Alaska 1983) (quoting 2A C. Sands, *Statutes & Statutory Construction* § 46.06 (4th ed. 1973)). The court violates this rule of construction in several ways.

First, the court renders subsection (1) superfluous. Under the court's interpretation, subsection (1) does not require or prevent any action which is not required or prevented by subsection (2). Additionally, the court fails to give effect and meaning to the phraseology used in subsection (1). Subsection (1) specifically identifies equipment "capable of lateral, vertical, or swinging motion." AS 18.60.670(1). This differentiation in types of equipment is meaningless unless the equipment's motion capability is accounted for. Why was this language used and this type of equipment singled out if the distinction makes no difference? The court provides no answer.

Furthermore, the court's interpretation renders the statute insignificant as a safety measure. As construed by the court, AS 18.60.670(1) offers negligible protection.[4]

---

2. I note the court's concern for the grammatical "ineffectiveness" of the sentence that would result from the Estate's construction. Ironically the court does not show the same concern for the practical ineffectiveness of the statute which results from its interpretation. Likewise, the court is willing to look to subsection (2) to analyze sentence construction, yet disregards that subsection in interpreting subsection (1).

3. It is theoretically possible to avoid the redundancy by differentiating between "place," the verb used in subsection (1), and "store, operate, erect, maintain, move, or transport," the verbs used in subsection (2). However, I cannot imagine a situation in which this difference would have any effect.

4. Applying the court's version of the statute to a hypothetical situation, it is apparent that the ten foot buffer is a truly minimal "margin of safe-

This interpretation ignores another important rule of statutory construction. If there is an ambiguity in the meaning of a safety statute, whether internally or by virtue of reference to another statute, we should construe the statute in a manner most consistent with the legislative purpose of promoting safety. *See Atwater v. Matanuska Electric Ass'n,* 727 P.2d 774, 776 (Alaska 1986) (construing AS 18.60.685, the penalty provision for violations of AS 18.60.670). Safety legislation should be liberally construed. *United States v. Blue Water Marine Ind.,* 661 F.2d 793, 796 (9th Cir.1981). *Cf. Allison v. State,* 583 P.2d 813, 817 (Alaska 1978) ("[W]e believe that exemptions [to safety legislation] should be narrowly construed.").

I decline to join in this court's speculation that the legislature "may" have been attempting to balance employee safety concerns with construction industry efficiency concerns. HEA did not argue efficiency concerns before this court.[5] Rather, HEA has urged that the statute reflects a balance of competing safety concerns. Evidence is nonexistent that the court's interpretation would lead to a more safe workplace than the trial court's interpretation, as HEA contends. The court, admitting that "the trial court's interpretation promotes a higher degree of safety," apparently agrees.

The Estate contends that the language "within 10 feet of a high voltage overhead electrical line or conductor" is the object of "capable of lateral, vertical, or swinging motion," instead of the object of "place."[6] That is, the statute prohibits the placement of equipment so that it is capable of specified motion within ten feet of the electrical lines. Because the statute is itself ambiguous, I cannot agree that the Estate's burden of proving its interpretation is a "heavy burden," or as the court announces for the first time, that the Estate must present a "compelling case." In light of the ambiguity of the statute, I consider the Estate's interpretation to be a reasonable one.

The court's conclusion that AS 18.60.-670(1) offers no additional protection beyond that mandated by AS 18.60.670(2) is correct, as those two subsections are interpreted by the court. I believe this interpretation to be a rejection of the very purpose for which the statute was enacted. The trial court's interpretation may be gleaned from reading AS 18.60.670 as a whole. It is the preferable interpretation in light of the statute's recognized purpose of ensuring a safe workplace.

ty." In fact, a few simple calculations reveal that subsection (1), as interpreted by the court, provides almost nothing to the workers it was intended to protect. Assuming that electrical wires are 30 feet above the base of the boom, use of an 80 foot boom yields the following results. With a ten foot buffer, the safe rotation range would be 195 degrees, exposing 147 feet of the electrical line to contact with the boom. In contrast, a five foot buffer would yield a safe rotation range of 188 degrees, exposing 148 feet of the electrical line to contact with the boom. If there were no buffer at all, the safe rotation range would be 180 degrees, exposing 148 feet of the electrical line to contact with the boom.

5. The court cites affidavits by two of HEA's experts, Michael Harbaugh and Terry Miller, in support of its efficiency concerns. In doing so, the court misconstrues HEA's arguments and its reliance on these experts. Harbaugh testified solely as to the safety implications of the trial court's interpretation, and Miller testified only as to prevailing industry practices. Neither expert discussed competing "efficiency concerns," or "heavier burdens for the construction industry."

6. The court implies several times that the Estate concedes there is but one "literal interpretation." The Estate is not urging that a non-literal interpretation be adopted, but only that the trial court's reading is also a "literal interpretation."