**COLONIAL INSURANCE COMPANY OF CALIFORNIA, Plaintiff,**

v.

**DEREK TUMBLESON,
et al., Defendants.**

**No. A94–184 CV (JKS).**

United States District Court,
D. Alaska.

Jan. 20, 1995.

Eric P. Gillett, Oles, Morrison & Rinker, Seattle, WA, for plaintiff.

George M. Kapolchok, Anchorage, AK, for defendant.

## ORDER FROM CHAMBERS

SINGLETON, District Judge.

## I. INTRODUCTION

This is an action for declaratory judgment in which Colonial Insurance Company of California ("Colonial") seeks a declaration that it is not obligated to pay the claims of Derek Tumbleson and his family ("Tumblesons") under the uninsured/underinsured ("UM/UIM") coverage in the auto insurance policy which Colonial issued to the Tumblesons. Both parties have moved for summary judgment and each argues that there are no disputed issues of material fact. Docket Nos. 3 and 5. The parties also argue that the remaining issues are legal issues regarding the interpretation of insurance policies which incorporate mandatory statutory provisions. *Id.*

## II. PROCEDURAL HISTORY

On April 28, 1994, Colonial filed this action for declaratory relief, seeking to avoid making payments to the Tumblesons under a UM/UIM policy issued by Colonial. Docket No. 1. Colonial alleges jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 2201 (Declaratory Judgment Act). *Id.* The Tumblesons do not contest jurisdiction but the Court nonetheless must engage in a jurisdictional inquiry. Colonial is a corporation organized and existing under the laws of the State of California, having its principal place of business in Anaheim, California. Colonial has satisfied the statutory requisites for filing an action in the State of Alaska. Each of the Tumblesons are residents and domiciliaries of the State of Alaska. Accordingly, there exists complete diversity of citizenship between the parties. The Colonial UM/UIM insurance policy issued to the Tumblesons is the focus of this action, and the limits of such policy is $50,

000/$100,000. Colonial seeks a declaration that the Tumblesons are not entitled to the $100,000 they seek under the UM/UIM policy. Accordingly, the amount in controversy is in excess of $50,000. Jurisdiction is thus proper under 28 U.S.C. § 1332. Because this Court has diversity jurisdiction, it sits as a trial court of the state of Alaska and will apply the substantive law of the State of Alaska. *See, e.g., Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1133 n. 8 (9th Cir.1994) (citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). In this case, the Court will look to decisions of the Alaska Supreme Court and AS § 28.20.445 (1994) (statute governing UM/UIM coverage in Alaska).

There are two pending motions in this case. Colonial filed a motion for summary judgment at Docket No. 3, and the Tumblesons filed a cross-motion for summary judgment at Docket No. 5. Both parties contend that there exists no material issues of fact in dispute and therefore judgment should be entered as a matter of law. *Id.* After reviewing the briefs submitted by the parties and conducting its own independent research, the Court, in a prior order, determined that there exists no Alaska Supreme Court precedent on this issue. *See* Docket No. 21. In addition, it appeared that decisions from other state courts on this issue are in conflict. *Id.* As a result, the Court determined that it would certify this case to the Alaska Supreme Court for resolution of the undecided issues. *Id.* A draft certification order was issued and the Court invited comments from the parties regarding the draft certification order. *Id.*

While preparing a final certification order, the Court had an opportunity to re-examine the precise issue for certification. Upon reconsideration, the Court now determines that certification is not proper because although the Alaska Supreme Court has not interpreted the specific provision of the statute at issue in this case, this Court can reasonably predict how the Alaska State Supreme will interpret such language. *See* ALASKA R.APP.P. 407 (1991) (Appellate Rule 407 is permissive). Moreover, contrary to what this Court originally determined, decisions

from other jurisdictions with statutes similar to the one at issue are not in conflict. The state court decisions originally relied upon by the parties and the Court do not interpret statutes with language similar to the Alaska statute. Rather, those cases turned on different statutory schemes, not different interpretations of similar statutes. Accordingly, examination of those cases provides no guidance for this case.

There does exist, however, three states with statutes similar to AS § 28.20.445(h). These states are North Dakota, Colorado, and Nebraska. The high courts of Alaska and Nebraska have not yet determined the meaning of the AS § 28.20.445(h) language. The courts in North Dakota and Colorado, however, have interpreted the meaning of such language. In Colorado, the supreme court stated:

> While we realize that the insureds will never be fully compensated for their loss, we see no evidence that the legislature intended to award the insureds more than they would have received if the tortfeasor had been insured or uninsured.

*Union Ins. v. Houtz,* 883 P.2d 1057, 1065 (Colo.1994); *see also Shelter Mut. Ins. Co. v. Thompson,* 852 P.2d 459, 462 (Colo.1993); *Barnett v. Am. Family Mut. Ins. Co.,* 843 P.2d 1302, 1305 (Colo.1993); *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 61 (Colo.1990); *Kral v. Am. Hardware Mut. Ins. Co.,* 784 P.2d 759, 765 (Colo.1989); and *Leetz v. Amica Mut. Ins. Co.,* 839 P.2d 511 (Colo.Ct.App.1992). The North Dakota Supreme Court reached a different conclusion, but the reasoning appears similar. *See Gabriel v. Minn. Mut. Fire and Cas.,* 506 N.W.2d 73, 77–78 (N.D.1993). The Colorado and North Dakota decisions are the only decisions in the country interpreting insurance statutes similar to AS § 28.20.445(h). Unfortunately, neither the North Dakota nor the Colorado Supreme Court cases address the precise issue of this case—the applicability of section (h)(2) when the tortfeasor's liability coverage has been reduced by payments to an insured. To the contrary, each of these decisions address the applicability of the section when payments are made to persons other than an insured. The reasoning is

helpful nonetheless. As a result, this case can be resolved by interpreting AS § 28.20.445 rather than certifying the case to the Alaska Supreme Court.

## III. BACKGROUND FACTS

On May 9, 1993, David Schram ("Schram") rear-ended Derek Tumbleson's 1990 Pontiac with his 1990 Chevrolet pickup truck. Injured in the accident were husband Derek Tumbleson, wife Laurie Tumbleson, and their children Andrew Tumbleson, Deanna Tumbleson, and Kristin Tumbleson. At the time of the accident, Schram's vehicle was insured by State Farm with liability coverage limits of $100,000/$300,000 (per person/per occurrence). The Tumblesons' vehicle was insured by Colonial. The Tumblesons' policy included UM/UIM coverage with limits of $50,000/$100,000. Docket No. 5 at 2, Exhibit 1, p. 1. For an additional premium, the Tumblesons also purchased UM/UIM coverage with limits of $50,000/$100,000. *Id.* at Exhibit 2, p. 1. State Farm paid $300,000 (its policy limit), to the Tumblesons in the following manner:

$100,000 plus interest & Rule 82 attorneys fees to Andrew

$100,000 plus interest & Rule 82 attorneys fees to Deanna

$ 92,500 plus interest & Rule 82 attorneys fees to Derek & Laurie (combined)

$  7,500 to Kristin

The amounts received by the Tumblesons are allegedly insufficient to fully compensate them for their injuries. Docket No. 5. Accordingly, each of the Tumblesons are making a claim on the Colonial policy for UIM coverage. Colonial seeks a declaration that the policy does not afford coverage to persons with UIM coverage limits less than the tortfeasor's liability coverage. The Colonial policy in effect at the time of the accident is very similar to Alaska's UIM statute. The differences are purely semantic. *See* AS § 28.20.445.

## IV. DISCUSSION

Coverage in this case turns on the definition of "underinsured motor vehicle" as set forth in the policy and in AS § 28.20.445. The Colonial policy provides coverage for an "underinsured motor vehicle," but Colonial argues that the facts are such that there does not exist an "underinsured motor vehicle." Docket No. 3. The parties rely on two separate sections of AS § 28.20.445 when determining UIM coverage. Colonial argues that AS § 28.20.445(h) ("section (h)") is the controlling, or triggering section, whereas the Tumblesons argue that AS § 28.20.445(b) ("section (b)") determines whether there exists UIM coverage. Section (b) provides, in pertinent part:

(b) An amount payable under the uninsured and underinsured motorist coverage shall be excess to an amount payable under automobile bodily injury, death, or medical payments coverage, or as workers' compensation benefits and may not duplicate amounts paid or payable under valid and collectible automobile bodily injury, death, or medical payments coverage, or as workers' compensation benefits.

Section (h) provides, in pertinent part:

(h) "Underinsured motor vehicle" means a motor vehicle licensed for highway use with respect to the ownership, operation, maintenance, or use of which motor vehicle there is a bodily injury or property damage insurance policy or a bond applicable at the time of the accident and the amount of insurance or bond

(1) is less than the limit for uninsured and underinsured motorists coverage under the insured's policy; or

(2) has been reduced by payments to persons other than an insured, injured in an accident, to less than the limit for uninsured and underinsured motorists coverage under the insured's policy.

### A. Whether Section (b) or Section (h) determines UIM coverage

The critical issue before the Court is whether the 1990 amendment to the insurance act repealed, by implication, sections (h)(1) and (2), although the amendment does not specifically reference sections (h)(1) and (2). The United States Supreme Court has outlined the types of implicit repeal:

[There are] two well-settled categories of repeal by implication—(1) where provisions in the two acts are in irreconcilable conflict, the latter act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*In re Glacier Bay,* 944 F.2d 577, 581 (9th Cir.1991) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (quoting *Posadas v. Nat. City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936))). The Alaska Supreme Court has expressly adopted the same categories. *Peter v. State,* 531 P.2d 1263, 1267 (1975) (citing *Posadas,* 296 U.S. at 503, 56 S.Ct. at 352). The Tumblesons' argue both that section (b) and section (h) are irreconcilable and thus section (h) was impliedly repealed, and that section (b) is broad enough to cover the entire UM/UIM coverage issue, thus operating as a repeal of section (h). The arguments proffered by the Tumblesons are addressed below, but it is useful to first examine treatment of implicit repeal by the Ninth Circuit and the Supreme Court of Alaska.

The Ninth Circuit, citing United States Supreme Court decisions, stated that it does not favor repeal by implication. *In re Glacier Bay,* 944 F.2d at 581 (citing *Radzanower,* 426 U.S. at 154, 96 S.Ct. at 1993; *Posadas,* 296 U.S. at 503, 56 S.Ct. at 352; and *Grindstone Butte Project v. Kleppe,* 638 F.2d 100, 102 (9th Cir.1981)). Continuing, the Ninth Circuit Court stated that it will only find a statute implicitly repealed when "the new statute is clearly repugnant, in words or purpose, to the old statute...." *Id.* (quoting *Grindstone,* 638 F.2d at 102) (citations omitted)). "[T]he intention of the legislature to repeal must be clear and manifest." *Id.* (quoting *Radzanower,* 426 U.S. at 154, 96 S.Ct. at 1993). Moreover, if two statutes are in partial conflict, "Repeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then only to the minimum extent necessary." *Id.* at 582 (quoting *Silver v. New York Stock Exchange,* 373 U.S. 341, 357, 83 S.Ct. 1246,

1257, 10 L.Ed.2d 389 (1963)). The Alaska Supreme Court has adopted a similar unwillingness to repeal statutes by implication.

■ The rule for repeal by implication has long been established in the State of Alaska. *Peter v. State,* 531 P.2d 1263 (1975) (repeal by implication is not favored). Repeal by implication is limited, and it is established only when it is necessary to carry out the legislature's intent. *Id; see also Warren v. Thomas,* 568 P.2d 400, 402 (Alaska 1977). If there exists any reasonable interpretation that will give effect to both statutes, the court will not impliedly repeal the statute. *Id.* at 1267. Each section of a statute should be read together with every other section so as to produce a harmonious whole. *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975). The Alaska Supreme Court does not mechanically apply the plain meaning of a statute, however, and disregard legislative intent. *Fairbanks N. Star School v. NEA–Alaska,* 817 P.2d 923 (Alaska 1991) (citing *Alaska Pub. Employees Ass'n v. City of Fairbanks,* 753 P.2d 725, 727 (Alaska 1988)). Instead, the court has adopted a sliding scale approach toward statutory interpretation. *Id.* Under the sliding scale approach, "[T]he plainer the language of the statute, the more convincing any contrary legislative history must be." *Id.* (citing *State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982)). The arguments proffered by Colonial and the Tumblesons are subject to these standards.

Colonial contends that the two part definition of an underinsured motor vehicle set forth in section (h) determines whether there is UIM coverage available to an insured because it is the triggering mechanism for the coverage. *See* Docket No. 3. In Colonial's view, a determination under section (h) must first be made in order to determine whether there is "an amount payable under the uninsured and underinsured motorist coverage," because if there is no such "amount payable," section (b) never comes into play. Under an application of section (h), Colonial argues, Schram's vehicle was not an underinsured vehicle because: 1) his liability policy limits were higher than the Tumblesons' UIM coverage limits; and 2) because Schram's liabili-

ty carrier made payments only to the Tumblesons, who are "insureds." *Id.*

The Tumblesons, on the other hand, argue that: 1) section (b) is a product of the 1990 amendment; 2) the purpose of the 1990 amendment is to provide greater UIM coverage to insureds ("excess" coverage); 3) section (b) is inconsistent with section (h) and therefore it must have been an oversight to leave section (h) in the statute; and 4) therefore the Court must determine that section (b) repeals section (h) by implication. In support of their claim, the Tumblesons rely on the specific language contained in section (b), and compare that language to certain comments made by legislators and lobbyists during the legislative process. The four-part argument proffered by the Tumblesons is addressed below.

■ The Tumblesons are correct in their first assertion; sections (a–c) were repealed and reenacted, thus section (b) is a product of the 1990 amendment. Docket No. 5 Exhibit 11 (1990 Alaska Sess.Laws ch. 78). The Tumblesons' second assertion is also true— the 1990 amendment does provide greater UIM coverage and section (b) is properly characterized as "excess coverage." Under the old statute, once the UIM coverage was triggered, the amount of UIM coverage was reduced by the amount already paid out by the tortfeasor's policy. For example, if a UIM insured with a policy for $100,000 suffers $200,000 worth of injury from a tortfeasor with a $50,000 liability limit, the UIM insured would only recover $50,000 from his UIM carrier because the $100,000 UIM limit would be reduced by the $50,000 paid out by the tortfeasor's policy. Under the amended statute, however, there is no reduction of the UIM limit for payments made by the tortfea-

sor's policy. Under the same fact scenario, applying the new statute, the UIM insured will recover $50,000 from the tortfeasor and then $100,000 from his UIM policy. Thus, the coverage is in excess of the tortfeasor's policy. Accordingly, the Tumblesons' characterization of UIM coverage as excess coverage is correct.

The Tumblesons' third argument misperceives the relationship between sections (b) and (h). The Tumblesons interpret the "excess coverage" language of section (b) to mean that UIM coverage will always stack on top of the tortfeasor's policy, i.e., UIM insureds will recover from the tortfeasor's policy and then the UIM policy. Section (b) provides in pertinent part, "An amount payable under the uninsured and underinsured motorist coverage shall be excess to an amount payable under automobile ... coverage...." The Tumblesons stress the importance of the word "excess." The Tumblesons' interpretation of "excess" is only partly correct. Once the UIM coverage is triggered, then the Tumbleson interpretation is correct. The key distinction is, however, when the UIM coverage is triggered. The triggering of UIM coverage is governed by section (h), which was not amended in 1990. If the UIM coverage is not triggered, i.e., there does not exist an "underinsured motorist," then the UIM carrier is not obligated to pay any UIM claims. In this case, the key to recovery is not the amount the UIM carrier will pay—which is governed by section (b) once it is determined that UIM coverage exists—but rather, whether the UIM coverage was ever triggered—which is governed by section (h). The 1990 amendment changed the law to afford greater recovery for UIM insureds. It did not, however, change the triggering criteria. Accordingly, sections (b) and (h) are not inconsistent.[1]

---

**1.** As demonstrated in the paragraph above, the Tumblesons are correct that the 1990 amendment affords UIM insurers greater coverage. Indeed, once the UIM coverage is triggered, payments by the tortfeasor's policy does not reduce the **amount** of UIM coverage. The old law was coined by commentators as a "dollar-for-dollar" reduction in coverage because the UIM insured's coverage was automatically reduced by the amount of the tortfeasor's liability coverage. *See*

Martin J. Huelsmann & William G. Knoebel, *Underinsured Motorist: An Evolving Insurance Concern:* 17 N.Ky.L.Rev. 417 (1990) (discussing UIM coverage in detail). The new law actually eliminates the "dollar-for-dollar" reduction method. Instead, the UIM insured, once coverage is triggered, will receive up to the total UIM limit, subject to the amount of her damages. For example:

While the Court concludes that the plain meaning of AS § 28.20.445 is clear on its face, the Tumblesons argue that the statute should be interpreted in accordance with legislative intent. "Generally, the most reliable guide to the meaning of a statute is the words of the statute construed in accordance with their common usage." *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1043–44 (Alaska 1992) (citing *Lagos v. City & Borough of Sitka*, 823 P.2d 641, 643 (Alaska 1991)). However, even when statutory language appears clear in the abstract, the Court may consult legislative history and the rules of statutory construction when the otherwise clear language takes on another meaning when viewed in context. *Id.* In *Homer*, the controversy arose when a machine equipped with a vertical and lateral swinging lift line hit an overhead electrical line and electrocuted a worker. *Id.* There existed at the time of the accident a statute declaring it unlawful to place machinery within ten feet of high voltage overhead electrical lines. *Id.* at 1043. The issue in the case involved interpretation of the ten foot requirement. It appears that the machinery was positioned so that it was more than ten feet from the electrical line, but the moving parts of the machine could extend to within ten foot feet of the electrical line. *Id.* One party interpreted the statute to require that machinery be placed far enough away so that the extensions cannot reach to within the ten foot zone, whereas the other party interpreted the statute literally, requiring only that the machine be placed ten feet away. *Id.* at 1043, 1044. The Supreme Court of Alaska determined that the language of the statute was clear and unambiguous, but also determined that the interpretations by both parties were reasonable. The court thus concluded that it was proper to examine legislative history and ascertain its intent. *Id.*

Although the supreme court determined that it could examine the intent of the legislature, it nonetheless established a heavy burden for the party seeking to overcome the plain meaning. *Id.* at 1044. The court stated that legislative history and rules of construction must present a compelling case that the literal meaning of the language of the statute is not what the legislature intended. *Id.* (citing *University of Alaska v. Geistauts*, 666 P.2d 424, 428 n. 5 (Alaska 1983) ("[w]here a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning has a correspondingly heavy burden of demonstrating contrary legislative intent."); and *State v. Alex*, 646 P.2d 203, 208 n. 4 (Alaska 1982) (under Alaska's sliding-scale approach to statutory interpretation, the more plain the language of the statute the more convincing the evidence of contrary legislative intent must be)). The legislative record provided support for the position contrary to the plain meaning but also provided some support for the plain meaning of the

| Hypotheticals | Result prior to 1990 Amendment | Result after the 1990 Amendment |
|---|---|---|
| $ 50,000 liability cov. $100,000 UIM coverage $200,000 in damages | UIM insured will only receive $50,000 in UIM coverage because the UIM coverage is reduced by the $50,000 already paid by the liability policy. Thus, the UIM insured realizes a $100,000 net. | UIM insured will recover $50,000 from the liability carrier and then an additional $100,000 from his UIM carrier because the UIM policy is **an excess** coverage (**once UIM coverage is triggered**). |
| $300,000 liability coverage $100,000 UIM coverage $500,000 in damages | Same as above, UIM insured will only receive $300,000 because for every dollar paid out by the liability carrier, the UIM coverage will be reduced by a dollar. The UIM coverage is never triggered. | UIM coverage is not triggered. As opposed to the above hypothetical, there does not exist the circumstances necessary to trigger UIM coverage in this hypothetical. Accordingly, the UIM insured will be limited to the liability coverage: $300,000. |

The key to recovery is not the **amount** the UIM coverage will pay, but rather, whether there exists UIM coverage. As demonstrated in the first hypothetical, if the coverage is triggered, the coverage is much better under the 1990 amendment. If the UIM coverage is not triggered, the amount of recovery is the same under both pre and post 1990 amendment. The 1990 amendment changed it so that the UIM coverage will not "disappear dollar-for-dollar" when triggered. It did not change the triggering criteria. Accordingly, section (b) (**excess** recovery), and section (h) (triggering requirements), are not inconsistent.

statute. *Id.* at 1044–46. The supreme court ultimately determined that the implicit evidence proffered was insufficient because it did not present a compelling case that the legislature intended for something other than a literal interpretation. *Id.* at 1044. Accordingly, the court applied the literal meaning of the statute.

In an attempt to rebut Colonial's interpretation of sections (b) and (h), and in support of the proposition that the failure to repeal section (h) was an oversight, the Tumblesons cite comments made in the Alaska legislature regarding the proposed changes to AS § 28.20.445. Representative Dave Donley ("Donley") sponsored the bill which eventually became law. In citations provided by the Tumblesons, Donley refers to UIM coverage under the amendment as excess coverage." *See generally* Docket No. 5 Exhibit 12 (comments made to and from the legislative committee prior to passage of the bill amending AS § 28.20.445). Donley further states that he "would like to maximize the potential coverage of the insured up to the amount of their damages." *Id.* He does not, however, address the crucial issue, when UIM coverage is triggered. Rather, he only characterizes "excess coverage" as "anything beyond primary coverage." *Id.* In an article printed in the *Bar Rag,* the Alaska Bar Association's newspaper, Donley urges Alaskans to buy as much UIM coverage as practicable, in order "to better protect themselves and their families." *See* Docket No. 5 Exhibit 13 (Vol. 18, No. 3 May/June 1994). Donley continued, "Many such consumers who are later involved in serious accidents greatly regret this failure to protect themselves." *Id.*

There are two problems with the Tumblesons' reliance on Donley's article in the *Bar Rag.* First, the article does not pertain to the amendment to AS § 28.20.445 that is at issue in this case. Donley's article pertains to a bill proposing that insurance companies should not have to offer UM/UIM coverage with high limits. Donley attempted, in his article, to convey a message that automobile owners should evaluate their UM/UIM coverage and consider purchasing additional UM/UIM coverage if the current amount is inadequate. Second, Donley's article was published in the May/June 1994 issue of the *Bar Rag*—several years after passage of the AS § 28.20.445 amendments. The Ninth Circuit and the United States Supreme Court have found that "statements made by a legislator after enactment of a statute and not a part of the records of the legislative body are entitled to little or no weight at all." *Montana Power Co. v. Envtl. Protection Agency,* 608 F.2d 334, 353 n. 36 (9th Cir.1979) (quoting *Epstein v. Resor,* 296 F.Supp. 214 (N.D.Cal. 1969), *aff'd,* 421 F.2d 930 (9th Cir.), *cert. denied,* 398 U.S. 965, 90 S.Ct. 2176, 26 L.Ed.2d 549 (1970)). The Alaska Supreme Court has adopted a similar rule. In *Hillman v. Nationwide Mutual Fire Ins. Co.,* the supreme court stated, "While the legislature is fully empowered to declare present law by legislation, it is not institutionally competent to issue opinions as to what a statute passed by an earlier legislature meant." 758 P.2d 1248 (Alaska 1988); *see also Frontier Co. v. Jack White Co.,* 818 P.2d 645 (Alaska 1991) (quoting *Hillman* ). In light of the authority cited and the fact that Donley's article is not on point, the Court concludes that Donley's *Bar Rag* article is insufficient to establish legislative intent.

It is clear from Donley's comments in committee that section (b) was re-written to eliminate the dollar-for-dollar reduction of UIM coverage by the tortfeasor's policy and therefore UIM coverage is coverage in excess of the tortfeasor's policy. Equally as clear is the fact that Donley intended to afford greater protection to UIM insureds by making significant changes to Alaska's insurance law. It is not clear, however, that Donley intended to change the triggering component of the statute located in section (h). Without section (h), it would be unclear as to when an insured is entitled to UIM coverage. Arguably, it is true that section (b), if section (h) was deleted, could·be interpreted to address not only the issue of the amount of coverage, but also the question of when coverage is applicable. However, this would require the absence of section (h) and a very broad interpretation of section (b). As the statute currently reads, however, the issue of when UIM coverage is triggered is addressed in section (h). Accordingly, it is the opinion of the Court that Representative Donley's com-

ments support the language contained in section (b) but do not contradict the plain language contained in section (h), fail to establish any inconsistency between the two sections, and therefore are insufficient to convince the Court that the legislature inadvertently forgot to remove section (h) after adding section (b) or that section (h) should somehow defer to section (b).

In further support of their position that the intent of the legislature was to provide coverage in a situation such as the present case, the Tumblesons present a comment made by Don Koch ("Koch") from the Division of Insurance. Koch assisted in the drafting of the bill which later became the 1990 amendment. Docket No. 5 Exhibit 12 at 1. In his summary of the proposed bill, Koch focused on a particular flaw of the old law; specifically, the fact that the covered losses are "reduced by a variety of payments such as worker's compensation, medical payment coverage, and payments made by the [UM] or [UIM] motorist." Docket No. 5 Exhibit 12 at 1 (comments made by Koch to the legislative committee prior to passage of the bill). Koch's summary of the bill supports the Court's conclusion. But, in a later comment, Koch stated, "[The bill] would assure that if an individual bought $100,000 of uninsured or underinsured protection, and the other party has $200,000 coverage available, the first individual's $100,000 coverage would come in after the $200,000 is utilized." Docket No. 5 Exhibit 12 at 3.

Koch did not elaborate on what he meant by "after the $200,000 is utilized." Koch could have meant that the $100,000 comes in after the $200,000 is utilized by persons other than the insured. But, he also could have meant that the UIM coverage will be triggered automatically, without satisfying the requirements of section (h). Assuming that the latter is a more reasonable interpretation of his comment, the Court nonetheless finds that Koch's comment is insufficient to overcome the clear, unambiguous statutory language contained in section (h). As the Supreme Court of Alaska has stated, "the plain-

er the language of the statute, the more convincing any contrary legislative history must be." *Id.* (citing *State v. Alex,* 646 P.2d 203, 208 n. 4 (Alaska 1982)). Furthermore, each section of AS § 28.20.445 should be read together so as to produce a harmonious whole. *City of Anchorage v. Scavenius,* 539 P.2d 1169, 1174 (Alaska 1975). The language contained in section (h) is plain. The legislative history proffered by the Tumblesons does not "present a compelling case that the literal meaning of the language of the statute is not what the legislature intended." *Id.* at 1044 (citing *University of Alaska v. Geistauts,* 666 P.2d 424, 428 n. 5 (Alaska 1983)); *see also Homer,* 841 P.2d at 1043–44 ("The most reliable guide to the meaning of a statute is the words of the statute construed in accordance with their common usage"). Moreover, the interpretation suggested by the Tumblesons ignores or eliminates section (h) entirely, whereas it is reasonable to read both section (b) and section (h) together without contradiction. As the Tumblesons correctly note, "[T]he 1990 amendment to AS § 28.20.450 rewrote sections (a)–(c) of the Uninsured and Underinsured Motorists Coverage statute but carried forward this old definition." Docket No. 5 at 8 (referring to the definition of when UIM coverage is triggered—section (h)).[2] The Court thus determines that sections (b) and (h) are thus not inconsistent and the literal meaning will be adopted by the Court.

The Tumblesons fourth argument is that section (b) must be controlling over section (h) because application of section (h) makes UIM coverage illusory. Docket No. 5 at 9. The minimum liability insurance required in Alaska is $50,000/$100,000. The statute also requires insurance companies to offer UM/UIM coverage to the minimum of the liability coverage purchased—a minimum of $50,000/$100,000. It is true that under the statute, a person who purchases the minimum liability coverage and the minimum UM/UIM coverage has, in essence, purchased no UIM coverage when the situation is such that only the UIM insured makes a claim against the liability policy. It is not possible for the tortfeasor to be underinsured because if insured,

---

**2.** If the legislature intended to remove section (h), then the legislature now has the opportunity to remove section (h) following resolution of this

decision. It is not within the powers of the judiciary to legislate.

the tortfeasor must have at least the statutory minimum $50,000/$100,000 coverage. Under section (h), the UIM coverage will not be triggered. The UM/UIM purchaser has, however, purchased UM coverage because it is possible that the tortfeasor is uninsured. If the tortfeasor is uninsured, the UM/UIM insured will recover up to her UM/UIM limit of $50,000.

▮ Although there is a possibility that the UM/UIM coverage is useless in a two car collision with only the UIM insured making a liability claim against the tortfeasor who has the statutory minimum coverage amounts, the UM/UIM coverage is available under other situations. The first example was stated above, the uninsured tortfeasor situation. In addition, if more than just the UIM insured makes a claim against the tortfeasor's $50,000/$100,000 policy, then the $50,000/$100,000 UM/UIM policy that the Tumblesons label illusory is triggered. Pursuant to section (h)(2), if the tortfeasor's liability policy is the same or more than the UM/UIM policy, the UM/UIM insured may nonetheless recover if payments from this policy are made to persons other than the insured. AS § 28.20.445(h)(2). Accordingly, there exist situations under AS § 28.20.445(h) where UIM coverage will be triggered and situations where it will not be triggered. The Court finds the Tumblesons' illusory argument unconvincing.[3] The final inquiry for the Court is to analyze section (h) and determine whether UIM coverage is triggered in this case.

### B. Section (h) application

▮ Now that it is determined that section (h) is the triggering component of AS

§ 28.20.445, section (h) must be applied to the facts of this case.[4] Section (h) is not ambiguous. Section (h) provides that the UIM insured will not receive UIM coverage if their UIM coverage is less than the tortfeasor's liability coverage [*see* section (h)(1) ], unless the tortfeasor's liability coverage has been reduced by payments to persons **other than an insured**, to the point where the available limit of the tortfeasor's policy is less than the UIM limit of the UIM insured [*see* section (h)(2) ].

Section (h)(1) precludes UIM coverage if the UIM policy limit is less than the tortfeasor's policy limit; notwithstanding the section (h)(2) exception. In this case, the tortfeasor's policy limit is $100,000/$300,000 and the UIM limit is $50,000/$100,000. A total of $300,000 was paid to the five Tumblesons, but three of the Tumblesons received less than $50,000 each. On one hand, a section (h)(1) application appears simple—the tortfeasor's policy is larger than the UIM policy and thus section (h)(1) precludes UIM coverage. On the other hand, the amount actually received by Derek, Laurie, and Kristin Tumbleson was less than the $50,000 individual limits. Thus, an argument can be made that Derek, Laurie, and Kristin did not realize the benefit of the $50,000 individual UIM coverage. In rebuttal, however, the Tumblesons together received $300,000, which is certainly more than the $100,000 afforded under the UIM policy—thus Derek, Laurie, and Kristin adequately received their UIM coverage by virtue of the fact that they received their proportionate share of $300,000, the tortfeasor's liability limit. After all, they received

---

**3.** It is also important to note that as a general rule, "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Id.* (quoting *Alascom, Inc. v. North Slope Borough, Bd. of Equalization*, 659 P.2d 1175, 1178 n. 5 (Alaska 1983) which quotes 2A C. Sands, Statutes & Statutory Constr § 46.06 (4th ed. 1973)). The Tumblesons' interpretation of AS § 28.20.445 requires the Court to deem section (h) inoperative. The Tumblesons' provide no other explanation for the existence of section (h) except that it was inadvertently left in place during the amendment five years ago.

**4.** There exist only four states that have a statute with a section similar to section (h)(2). These

states are: Alaska, North Dakota, Colorado, and Nebraska. The high courts of Alaska and Nebraska have not yet determined the meaning of this section. The courts in North Dakota and Colorado have reached contrary conclusions, but the reasoning appears similar. Neither the North Dakota nor the Colorado Supreme Court cases, however, address the precise issue of this case, i.e., the applicability of section (h)(2) when the tortfeasor's liability coverage has been reduced by payments to an insured. *See Union Ins. v. Houtz*, 883 P.2d 1057, 1065 (Colo.1994); *Gabriel v. Minn. Mut. Fire and Cas.*, 506 N.W.2d 73, 77–78 (N.D.1993).

more, by virtue of the larger tortfeasor policy, than they would have under the UIM policy alone, i.e., if the tortfeasor would have been uninsured, the $100,000 UIM policy would have been split between all five Tumblesons. Derek, Laurie, and Kristin would have probably received a small proportionate share under the latter hypothetical. Moreover, even if the tortfeasor's policy was $99,999, Derek, Laurie, and Kristin would have received a proportionate share of $199,999 (tortfeasor's liability limit plus UIM limit), which is likely to be less than their proportionate share of $300,000. Accordingly, it seems reasonable to conclude that proper application of § 28.20.445(h)(1) denies the triggering of UIM coverage in this case.[5]

Section (h)(2) may be the most critical section in regard to the triggering of UIM coverage in this case. Section (h)(2) is clear and unambiguous. UIM coverage is triggered by section (h)(2) when, although the UIM limit is less than the tortfeasor's liability limit, the resources available from the tortfeasor's policy have been reduced to below the amount of the UIM limit by payments made to persons other than the insured. For purposes of insurance law, the Tumblesons are **insureds**. The tortfeasor, Schram, was insured by State Farm with liability limits at $100,000/$300,000. State Farm paid $300,000 to the Tumblesons. Docket No. 5 at 2. Since the payments were made to insureds, the section (h)(2) exception is inapplicable. Accordingly, section (h)(2) does not trigger UIM coverage.

## IV. CONCLUSION

The Court has reviewed the arguments presented by the Tumblesons and concludes that while the Tumblesons' raise serious public policy concerns, the statute clearly mandates that coverage does not exist. Although the Alaska legislature amended AS § 28.20.445 to provide broader UM/UIM protection, the amended section (b) is not inconsistent with the unchanged section (h) and thus section (h) is applicable to the present litigation. Section (h) determines when UIM coverage is available and section (b) determines how much compensation the UIM insured will receive. Moreover, the intent of Alaska's legislature does not conclusively demonstrate that it intended to remove section (h) or somehow make it inapplicable to this situation. Accordingly, Colonial's motion for summary judgment at **DOCKET NO. 3** is **GRANTED,** and judgment shall be entered in favor of Colonial Insurance Company in its declaratory action. In addition, the Tumblesons' cross motion for summary judgment at **DOCKET NO. 5** is **DENIED.**

**IT IS THEREFORE ORDERED:**

Plaintiff's motion at **DOCKET NO. 3** for summary judgment is hereby **GRANTED** and **JUDGMENT ENTERED FOR THE PLAINTIFF.** In addition, Defendants' cross motion for summary judgment at **DOCKET NO. 5** is **DENIED.**

---

**5.** In addition, the Alaska Supreme Court has determined that insurance policies should be interpreted as to provide the coverage an ordinary layperson would expect to have through her interpretation of the policy. *Starry v. Horace Mann Ins. Co.,* 649 P.2d 937 (Alaska 1982). A reasonable layperson would interpret the language of section (h)(1) to deny coverage because $300,000 is greater than $100,000 and $300,000 was paid to the Tumblesons. The Court is also of the opinion that a layperson would interpret section (h)(2) to deny coverage because the insureds, the Tumblesons, were the only persons who received payments from the tortfeasor's policy. Section (h)(2) is discussed in the following paragraph.